UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH EARL LUCAS,<br><br>Defendant. | CASE NO.: 2:23-cv-2813<br><br><br><br>COMPLAINT OF THE UNITED STATES OF AMERICA<br><br>JURY TRIAL DEMANDED |

For its Complaint, the United States of America alleges as follows:

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act").

**JURISDICTION AND VENUE**

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the Southern District of Ohio, and Defendant resides in the Southern District of Ohio.

**FACTUAL ALLEGATIONS**

4. Defendant Joseph Earl Lucas resides in the City of Amesville, in Athens County, Ohio.

5. During part or all of the period of time relevant to this action, Defendant owned and operated over seventy residential rental properties (the "Subject Properties") located in and around Athens County, Ohio, including in Amesville, Athens, Chauncey, Chesterhill, Coolville,

Corning, Glouster, Jacksonville, Millfield, Nelsonville, New Marshfield, The Plains, Stewart, and Trimble.

6. Nearly all of the Subject Properties are small single family homes, duplexes, or mobile homes.

7. The Subject Properties are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

8. At all times relevant to this action, Defendant has been actively involved in the management of the Subject Properties, including, but not limited to, showing the properties to prospective tenants, establishing the terms of oral and written leases, collecting rent, receiving maintenance requests, hiring maintenance workers and crews for repairs, inspecting completed maintenance work, communicating with tenants regarding difficulties paying rent, and initiating eviction proceedings.

9. Since at least 2004, and continuing until the present, Defendant has subjected actual and prospective female tenants of the Subject Properties to discrimination on the basis of sex, including unwelcome and severe or pervasive sexual harassment, on multiple occassions. This conduct has included, but is not limited to:

   a. Offering to grant tangible housing benefits, such as reduced rent, to prospective female tenants in exchange for engaging in sexual acts with him;

   b. Offering to grant tangible housing benefits—such as reducing rent or excusing late or unpaid rent—to female tenants in exchange for engaging in sexual acts with him;

   c. Subjecting female tenants to unwelcome sexual touching;

   d. Repeatedly driving by and entering the the homes of female tenants without their permission and with no apparent legitimate reason to do so;

   e. Requesting sexual acts from actual and prospective female tenants;

2

  f. Making unwelcome sexual comments and sexual advances to female tenants and their female guests;

  g. Demanding that female tenants engage in sexual acts with him in order to not lose housing; and

  h. Taking adverse housing actions—such as refusing to provide needed maintenance services or initiating (or threatening to initiate) eviction actions—against female tenants who objected to or refused his sexual advances.

 10. For example, in or around 2004, a prospective female tenant met with Defendant to tour one of the Subject Properties, a single family home. At this meeting, while they were discussing rental payments, Defendant told the prospective female tenant that if she could not pay all of the rent they could "figure something out" for the rest, or words to that effect. Defendant was looking at the prospective female tenant suggestively when he made this comment, and based on his tone of voice and body language she understood this to be an offer to reduce or eliminate rent in exchange for sexual acts. She rejected this offer, and ultimately chose not to pursue renting from Defendant because of his unwelcome sexual advances.

 11. In another example, in or around 2012, Defendant subjected a female tenant to unwelcome and unwanted sexual comments and looks during his frequent and unannounced visits to her home. On some of these visits Defendant would use his key to enter her home. A few months into her tenancy, Defendant came to her home unannounced when her rent was late. After commenting that her rent was late, Defendant said they "could come up with some ideas on how to pay rent," or words to that effect. When the tenant asked him to clarify, Defendant said words to the effect that they could "take it out in trade" while looking at her in a suggestive manner. When she asked him if he meant sex, he responded "or whatever." The tenant rejected the sexual

3

advance and Defendant left. The tenant avoided contact with Defendant after this incident, often pretending not to be home when he would visit, and moved out a few months later.

12. In another example, in 2019, shortly afer a female tenant and her partner moved in, the female tenant observed Defendant driving slowly past her home on multiple occasions, often when she was alone, and staring at her home. This alarmed the tenant and she began leaving her blinds closed. In or around July 2019, when the tenant was approximately eight months pregnant and home alone, Defendant used his key to enter her home unannounced. He peered into the bathroom where she was showering. Shocked, she demanded that he leave. In or around August 2019, when the tenant was approximately nine months pregnant and home alone, Defendant came to her home unannounced and offered to forgive the rent she owed at that time in exchange for sex. She rejected this offer and told Defendant to leave. Within a few days the Defendant filed an eviction action. In or around September 2019, when the tenant was at home alone, breastfeeding her newborn child, Defendant again used his key to enter her home unannounced. He entered the bedroom were the tenant and her child were. The tenant demanded that he leave. Later that month, based on the eviction action Defendant filed, the tenant, her partner, and their newborn child were forced to move.

13. In another example, beginning in or about 2016 and continuing to at least 2022, Defendant engaged in repeated unwanted sexual contact, including oral sex, with a female tenant in exchange for a reduction in her rent. On several occasions since 2016, Defendant threatened this female tenant with eviction when she refused or ignored his requests for sexual contact, or after observing her with other men. Before he would drop these threats of eviction, Defendant would first require this female tenant to terminate any suspected relationship with these men and resume engaging in unwanted sexual contact, including oral sex, with Defendant.

4

14. The experiences of the women described above in paragraphs 10–13 were not the only instances of Defendant's sexual harassment of actual and prospective female tenants. Rather, they were part of his longstanding pattern or practice of illegal sexual harassment of multiple acutal and prospective female tenants from at least 2004 to the present.

15. The conduct of Defendant described in this Complaint caused actual and prospective female tenants to suffer fear, anxiety, and emotional distress, and interfered with their ability to secure and maintain rental housing for themselves and their families.

## CAUSE OF ACTION

16. By the actions and statements described above, Defendant has:

   a. Denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

   b. Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

   c. Made statements with respect to the rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

   d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

17. Under 42 U.S.C. § 3614(a), Defendant's conduct constitutes:

   a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, and

 b. A denial to a group of persons of rights granted by the Fair Housing Act that raises an issue of general public importance.

18. Actual and prospective female tenants have been injured by Defendant's discriminatory conduct. These persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Defendant's conduct.

19. Defendant's conduct was intentional, willful, and taken in reckless disregard of the rights of others.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that the Court enter an Order that:

 a. Declares that Defendant's discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601–3619;

 b. Enjoins Defendant, his agents, employees, and successors, and all other persons in active concert or participation with him, from:

  i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental of a dwelling;

  ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

  iii. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendant's past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    iv.    Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Defendant's unlawful practices;

c. Awards monetary damages to each person aggrieved by Defendant's discriminatory conduct, under 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against Defendant to vindicate the public interest, under 42 U.S.C. § 3614(d)(1)(C); and

e. Awards such additional relief as the interests of justice may require.

Dated:  August 31, 2023

Respectfully submitted,

MERRICK GARLAND
Attorney General

| | |
|---|---|
| KENNETH L. PARKER<br>United States Attorney<br>Southern District of Ohio | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | CARRIE PAGNUCCO<br>Chief |
| /s/  Michael J.T. Downey<br>MICHAEL J.T. DOWNEY<br>MATTHEW J. HORWITZ<br>Assistant U.S. Attorneys<br>United States Attorney's Office<br>Southern District of Ohio<br>303 Marconi Boulevard, Suite 200<br>Columbus, Ohio 43215<br>Phone: (614) 469-5715<br>E-mail: michael.downey@usdoj.gov | /s/ Erin Meehan Richmond<br>TIMOTHY J. MORAN<br>Deputy Chief<br>ERIN MEEHAN RICHMOND<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 532-3906<br>Fax: (202) 514-1116<br>E-mail: erin.richmond@usdoj.gov |
| | Attorneys for Plaintiff<br>United States of America |