UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH EARL LUCAS, JACOB BUSH, JOIE CARR, and JEREMY CARR,<br><br>Defendants. | CASE NO.: 2:23-cv-02813-MHW-CMV<br><br><br>AMENDED COMPLAINT OF THE UNITED STATES OF AMERICA<br><br>JURY TRIAL DEMANDED |

The United States of America alleges as follows:

1. The United States brings this action to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601-3619 ("Fair Housing Act").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

3. Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the United States' allegations occurred in the Southern District of Ohio, and Defendants reside in the Southern District of Ohio.

## FACTUAL ALLEGATIONS

4. Defendant Joseph Earl Lucas resides in Athens County, Ohio.

5. Defendant Jacob Bush is Defendant Joseph Earl Lucas's grandson.

6. Defendant Jacob Bush resides in Athens County, Ohio.

7. Defendant Joie Carr is Defendant Joseph Earl Lucas's granddaughter.

8. Defendants Joie Carr and Jeremy Carr are a married couple that reside in Athens County, Ohio.

## **DEFENDANT JOSEPH EARL LUCAS**

9. During part or all of the period of time relevant to this action (at least 2003 to at least 2023) ("Relevant Times" or "Relevant Time Period"), Defendant Joseph Earl Lucas managed over seventy residential rental properties (the "Subject Properties") located in and around Athens County, Ohio, including in Amesville, Athens, Chauncey, Chesterhill, Coolville, Corning, Glouster, Jacksonville, Millfield, Nelsonville, New Marshfield, The Plains, Stewart, and Trimble. During this period, these rental properties were owned and/or co-owned by one or more of the following: Joseph Earl Lucas, Jacob Bush, Joie Carr, and Jeremy Carr.

10. Nearly all of the Subject Properties are small single-family homes, duplexes, or mobile homes.

11. The Subject Properties are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

12. At all Relevant Times, Defendant Joseph Earl Lucas performed a full range of management duties related to the Subject Properties, including, but not limited to, showing the properties to prospective tenants, establishing the terms of oral and written leases, collecting rent, receiving maintenance requests, hiring maintenance workers and crews for repairs, inspecting completed maintenance work, communicating with tenants regarding difficulties paying rent, and initiating eviction proceedings.

13. During part or all of the Relevant Time Period, Defendant Joseph Earl Lucas had authority to act on behalf of Defendants Jacob Bush, Joie Carr, and Jeremy Carr to manage Subject Properties that Defendants Jacob Bush, Joie Carr and Jeremy Carr owned or co-owned. Defendant

Joseph Earl Lucas performed the property management duties described in paragraph 12, above, as an agent of Defendants Jacob Bush, Joie Carr, and Jeremy Carr.

14. Since at least 2003, and continuing until at least 2023, Defendant Joseph Earl Lucas has subjected actual and prospective female tenants of the Subject Properties to discrimination on the basis of sex, including unwelcome and severe or pervasive sexual harassment, on multiple occasions. This conduct has included, but has not been limited to:

   a. Offering to grant tangible housing benefits—such as reduced rent—to prospective female tenants in exchange for engaging in sexual acts with him;

   b. Offering to grant tangible housing benefits—such as reducing rent or excusing late or unpaid rent—to female tenants in exchange for engaging in sexual acts with him;

   c. Subjecting female tenants to unwelcome sexual touching;

   d. Repeatedly driving by and entering the homes of female tenants without their permission and with no apparent legitimate reason to do so;

   e. Requesting sexual acts from actual and prospective female tenants;

   f. Making unwelcome sexual comments and sexual advances to female tenants and their female guests;

   g. Demanding that female tenants engage in sexual acts with him in order to not lose housing; and

   h. Taking adverse housing actions—such as refusing to provide needed maintenance services or initiating (or threatening to initiate) eviction actions—against female tenants who objected to or refused his sexual advances.

15. For example, in or around 2004, a prospective female tenant met with Defendant Joseph Earl Lucas to tour one of the Subject Properties, a single-family home. At this meeting,

while they were discussing rental payments, he told the prospective tenant that if she could not pay all of the rent they could "figure something out" for the rest, or words to that effect. He was looking at the prospective tenant suggestively when he made this comment and based on his tone of voice and body language she understood this to be an offer to reduce or eliminate rent in exchange for sexual acts. She rejected this offer, and ultimately chose not to pursue renting from him because of his unwelcome sexual advances.

16. In another example, in or around 2012, Defendant Joseph Earl Lucas subjected a female tenant to unwelcome and unwanted sexual comments and looks during his frequent and unannounced visits to her home. On some of these visits he would use his key to enter her home. A few months into her tenancy, he came to her home unannounced when her rent was late. After commenting that her rent was late, he said they "could come up with some ideas on how to pay rent," or words to that effect. When the tenant asked him to clarify, he said words to the effect that they could "take it out in trade" while looking at her in a suggestive manner. When she asked him if he meant sex, he responded "or whatever." The tenant rejected the sexual advance and he left. The tenant avoided contact with him after this incident, often pretending not to be home when he would visit and moved out a few months later.

17. In another example, in 2019, shortly after a female tenant and her partner moved in, the tenant observed Defendant Joseph Earl Lucas driving slowly past her home on multiple occasions, often when she was alone, and staring at her home. This alarmed the tenant and she began leaving her blinds closed. In or around July 2019, when the tenant was approximately eight months pregnant and home alone, Defendant Joseph Earl Lucas used his key to enter her home unannounced. He peered into the bathroom where she was showering. Shocked, she demanded that he leave. In or around August 2019, when the tenant was approximately nine months pregnant

and home alone, Defendant Joseph Earl Lucas came to her home unannounced and offered to forgive the rent she owed at that time in exchange for sex. She rejected this offer and told him to leave. Within a few days Defendant Joseph Earl Lucas filed an eviction action. In or around September 2019, when the tenant was at home alone, breastfeeding her newborn child, Defendant Joseph Earl Lucas again used his key to enter her home unannounced. He entered the bedroom were the tenant and her child were. The tenant demanded that he leave. Later that month, based on the eviction action Defendant Joseph Earl Lucas filed, the tenant, her partner, and their newborn child were forced to move.

18. In another example, beginning in or about 2016 and continuing to at least 2023, Defendant Joseph Earl Lucas engaged in repeated unwanted sexual contact, including oral sex, with a female tenant in exchange for a reduction in her rent. On several occasions since 2016, Defendant Joseph Earl Lucas threatened this tenant with eviction when she refused or ignored his requests for sexual contact, or after observing her with other men. Before he would drop these threats of eviction, he would first require this tenant to terminate any suspected relationship with these men and resume engaging in unwanted sexual contact, including oral sex, with him.

19. In another example, beginning in or about 2018, Defendant Joseph Earl Lucas repeatedly asked a female tenant who was renting a property owned by Defendant Jacob Bush for sex in exchange for rent. He made the first such request in the tenant's driveway, when she met him there to give him part of her rent. After Defendant Joseph Earl Lucas insisted that she pay the full amount, he said, "if you want, you can come with me," or words to that effect. When the tenant asked him if he had work for her to do elsewhere, he said "no, that's not what I mean," or words to that effect. Defendant Joseph Earl Lucas then invited her to take a ride with him to "take care of it," or words to that effect. Based on his tone of voice and the way he was looking her up and

down, the tenant understood that Defendant Joseph Earl Lucas was asking her to go with him to do something sexual in exchange for the balance of the rent. She refused. There were multiple additional times when Defendant Joseph Earl Lucas stopped by the tenant's home to suggest, both to her and her partner, that she "go for a ride" with him in exchange for the rent they owed. On one of these occasions, when the tenant rejected his offer and told him to leave Mr. Lucas shouted, "this is my fucking property" and "you can't make me leave," or words to that effect.

20. In another example, beginning in or about 2020 and continuing until in or about 2022, Defendant Joseph Earl Lucas subjected a female tenant who rented a dwelling co-owned by Defendants Joie Carr and Jeremy Carr to repeated and unwelcome sexual comments and advances. When the tenant met Defendant Joseph Earl Lucas to view the property, he told her several times that there were "other ways" they could work out the rent payment, or words to that effect. Later, when the tenant was in the process of moving in, he stopped by to show her work that had been done to the property. While they were alone in her living room, Defendant Joseph Earl Lucas told her she could "work off" the rent, or words to that effect. Based on his body language and tone of voice, the tenant understood him to be suggesting that she could do something sexual with him in exchange for rent. When she rejected him, he responded by saying words to the effect of "my dick still gets hard." On another occasion, Defendant Joseph Earl Lucas touched the tenant in a way that was sexual and unwelcome, by grabbing her, kissing her, and touching one of her breasts when she was at his home to pay rent. When she pushed him away, he offered to let her keep her rent if she "[got] down on [her] knees," or words to that effect. She understood this to be a sexual request, which she rejected. Defendant Joseph Earl Lucas also entered the tenant's home without notice or permission, repeatedly invited her to his home to "work out" rent, and made sexual comments about her body.

21. The experiences of the women described above in paragraphs 15-20 were not the only instances of Defendant Joseph Earl Lucas's sexual harassment of actual and prospective female tenants. Rather, they were part of his longstanding pattern or practice of illegal sexual harassment of multiple actual and prospective female tenants from at least 2003 to at least 2023.

22. Defendant Joseph Earl Lucas's discriminatory housing practices, as described above, occurred within the scope of his agency relationship with Defendants Jacob Bush, Joie Carr, and Jeremy Carr, and were aided by the existence of that agency relationship.

## DEFENDANT JACOB BUSH

23. Since 2009, Defendant Jacob Bush has owned the Subject Property rented by the tenant described above in paragraph 19.

24. As owner, Defendant Jacob Bush engaged Defendant Joseph Earl Lucas to act as his agent to manage the Subject Property rented by the tenant described above in paragraph 19 and gave him the actual or apparent authority to perform the management duties described in paragraph 12 above.

25. Defendant Joseph Earl Lucas's discriminatory conduct, described above in paragraph 19, occurred while he was exercising his authority as agent for Defendant Jacob Bush. Defendant Jacob Bush is therefore vicariously liable for Defendant Joseph Earl Lucas's conduct, regardless of whether he knew or should have known of it.

## DEFENDANTS JOIE CARR AND JEREMY CARR

26. From 2013 to 2022, Defendants Joie Carr and Jeremy Carr owned the Subject Property rented by the tenant described above in paragraph 20.

27. As owners, Defendants Joie Carr and Jeremy Carr engaged Defendant Joseph Earl Lucas to act as their agent to manage the Subject Property rented by the tenant described above in

paragraph 20 and gave him the actual or apparent authority to perform the management duties described in paragraph 12 above.

28. Defendant Joseph Earl Lucas's discriminatory conduct, as described above in paragraph 20, occurred while he was exercising his authority as agent for Defendants Joie Carr and Jeremy Carr. Defendants Joie Carr and Jeremy Carr are therefore vicariously liable for Defendant Joseph Earl Lucas's conduct, regardless of whether they knew or should have known of it.

29. Defendants' conduct, as described in this Complaint, caused actual and prospective female tenants to suffer fear, anxiety, and emotional distress, and interfered with their ability to secure and maintain rental housing for themselves and their families.

30. Defendants' conduct, as described in this Complaint, was intentional, willful, and taken in reckless disregard of the rights of others.

## CAUSE OF ACTION

31. By the actions and statements described above, Defendants have:

   a. Denied dwellings or otherwise made dwellings unavailable because of sex, in violation of 42 U.S.C. § 3604(a);

   b. Discriminated in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith, because of sex, in violation of 42 U.S.C. § 3604(b);

   c. Made statements with respect to the rental of dwellings that indicate a preference, a limitation, or discrimination based on sex, in violation 42 U.S.C. § 3604(c); and

    d. Coerced, intimidated, threatened, or interfered with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights granted or protected by the Fair Housing Act, in violation of 42 U.S.C. § 3617.

32. Under 42 U.S.C. § 3614(a), Defendants' conduct constitutes:

    a. A pattern or practice of resistance to the full enjoyment of the rights granted by the Fair Housing Act, and

    b. A denial to a group of persons of rights granted by the Fair Housing Act that raises an issue of general public importance.

33. Actual and prospective female tenants have been injured by Defendants' discriminatory conduct. These persons are "aggrieved persons" as defined in 42 U.S.C. § 3602(i) and have suffered damages as a result of Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests that the Court enter an Order that:

    a. Declares that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601–3619;

    b. Enjoins Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from:

        i. Discriminating on the basis of sex, including engaging in sexual harassment, in any aspect of the rental of a dwelling;

        ii. Interfering with or threatening to take any action against any person engaged in the exercise or enjoyment of rights granted or protected by the Fair Housing Act;

    iii.    Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the victims of Defendants' past unlawful practices to the position they would have been in but for the discriminatory conduct; and

    iv.    Failing or refusing to take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, as nearly as practicable, the effects of Defendants' unlawful practices;

c. Awards monetary damages to each person aggrieved by Defendants' discriminatory conduct, under 42 U.S.C. § 3614(d)(1)(B);

d. Assesses civil penalties against Defendants to vindicate the public interest, under 42 U.S.C. § 3614(d)(1)(C); and

e. Awards such additional relief as the interests of justice may require.

Dated: February 21, 2024

Respectfully submitted,

MERRICK GARLAND
Attorney General

| | |
|---|---|
| KENNETH L. PARKER<br>United States Attorney<br>Southern District of Ohio | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| | CARRIE PAGNUCCO<br>Chief |
| /s/ Michael J.T. Downey<br>MICHAEL J.T. DOWNEY<br>MATTHEW J. HORWITZ<br>Assistant U.S. Attorneys<br>United States Attorney's Office<br>Southern District of Ohio<br>303 Marconi Boulevard, Suite 200<br>Columbus, Ohio 43215<br>Phone: (614) 469-5715<br>E-mail: michael.downey@usdoj.gov | /s/ Erin Meehan Richmond<br>TIMOTHY J. MORAN<br>Deputy Chief<br>ERIN MEEHAN RICHMOND<br>LORI K. WAGNER<br>Trial Attorneys<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>Phone: (202) 532-3906<br>Fax: (202) 514-1116<br>E-mail: erin.richmond@usdoj.gov<br><br>Attorneys for Plaintiff<br>United States of America |

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of February 2024, I caused a copy of the foregoing Amended Complaint to be served on counsel for Defendant Joseph Earl Lucas via ECF. On February 22, 2024, I shall cause a service copy of the foregoing Amended Complaint to be served on the following Defendants via FedEx overnight, signature requested delivery:

Jacob Bush
16841 State Route 550
Amesville, Ohio 45711

Joie D. Carr
17651 South Canaan Rd.
Athens, Ohio 45701

Jeremy Carr
17651 South Canaan Rd.
Athens, Ohio 45701

                                                    */s/ Michael J.T. Downey*
                                                    MICHAEL J.T. DOWNEY
                                                    Assistant U.S. Attorney